**Paul PAQUIN, Appellant,**

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION, Appellee.**

No. 96–7197.

United States Court of Appeals, District of Columbia Circuit.

Argued May 6, 1997.

Decided July 25, 1997.

Christopher G. Mackaronis, Washington, DC, argued the cause for the appellant.

Kenneth I. Juster, Washington, DC, argued the cause for the appellee. Bruce L. Montgomery was on brief.

Before: HENDERSON, ROGERS and TATEL, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Paul Paquin alleges that the Federal National Mortgage Association (Fannie Mae) violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*, and the District of Columbia Human Rights Act (DCHRA), D.C.Code Ann. §§ 1–2501 *et seq.*, by terminating him based on his age and by taking two retaliatory actions against him for engaging in conduct protected by the ADEA and the DCHRA. The district court awarded summary judgment to Fannie Mae on all of Paquin's claims. Paquin challenges the district court's award of summary judgment, its failure to order full discovery relating to performance evaluations of similarly situated employees at Fannie Mae and the magistrate judge's denial of expert fee reimbursement. We reverse the district court's refusal to order further discovery and, on that basis, reverse the district court's grant of summary judgment on Paquin's termi-

nation claim. With respect to Paquin's two retaliation claims we affirm the district court on one and reverse on the other. Finally, we affirm the magistrate judge's refusal to award expert fee reimbursement.

## I.

Paquin, currently 53 years old, began working for Fannie Mae in 1972 and four years later moved into Fannie Mae's newly formed Investor Relations Department (Department). Within that department he was promoted from manager to vice president to senior vice president, the highest position in the Department. The Department work has both an "external" aspect, involving relations with investors and analysts outside Fannie Mae, and an "internal" aspect, involving communications and strategy development within the company. The record is clear that Paquin performed the external aspects of his job well but, according to Fannie Mae, Paquin was deficient as to internal matters. Fannie Mae also claims that its senior management was disappointed with Paquin's performance on specific projects, such as Fannie Mae's 1993 Investor/Analyst Biennial Conference.

Toward the end of 1993 Fannie Mae decided to terminate Paquin. Paquin was informed of the decision on February 14, 1994. He was offered a severance agreement, valued at approximately $600,000, was informed he should review it with his lawyer and was given until March 8, 1994 to accept the offer. The proposed severance agreement included a waiver of any legal claims. On March 1, 1994 Paquin's lawyer wrote a letter to Fannie Mae stating that Paquin believed his age played a role in Fannie Mae's decision to terminate him and requesting a severance package worth in excess of $4 million. In return Paquin offered to sign a release. Although the parties engaged in negotiations Fannie Mae ultimately refused to alter the terms of the original offer. According to Fannie Mae the deadline for accepting the original offer was extended to March 16, 1994

but Paquin maintains there was no such extension.

On March 17, 1994 Paquin filed a charge of unlawful termination and retaliation with the United States Equal Employment Opportunity Commission (EEOC). That same day Fannie Mae sent a letter to Paquin stating that, because he had not accepted the now-expired offer, Paquin had been terminated effective close of business on March 16th without severance benefits. On June 8, 1994 Paquin filed suit in district court alleging unlawful termination and retaliation under the ADEA and the DCHRA. At the close of discovery Fannie Mae moved for summary judgment on all of Paquin's claims, which motion was granted. Paquin then filed this appeal.

## II.

### A. Termination Claim

▇ In ADEA cases we apply the familiar three-step burdenshifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for Title VII cases. *See Koger v. Reno*, 98 F.3d 631, 633 (D.C.Cir. 1996).[1] Under the first step of *McDonnell Douglas* the complainant must establish a *prima facie* case of discrimination. 411 U.S. at 802, 93 S.Ct. at 1824. In the ADEA context a complainant makes his required *prima facie* showing if he (i) belongs to the protected age group, (ii) was qualified for the position, (iii) was terminated and (iv) was replaced by a younger person. *See Coburn v. Pan Am. World Airways, Inc.*, 711 F.2d 339, 342 (D.C.Cir.), *cert. denied*, 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983). If the complainant succeeds in establishing a *prima facie* case, the second step of the *McDonnell Douglas* framework shifts the burden to the defendant employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action. 411 U.S. at 802, 93 S.Ct. at 1824. If the defendant does so, then under the third step of *McDonnell Douglas* the complainant must produce evi-

---

**1.** The *McDonnell Douglas* framework also applies to Paquin's claim under the DCHRA. *See Perkins v. District of Columbia*, 769 F.Supp. 11, 14 n. 3 (D.D.C.1991). Because we apply the same analysis to Paquin's ADEA and DCHRA claims, we refer from this point on to his claim under the ADEA only.

dence showing that the defendant's proffered reason is but a pretext for discrimination. *Id.* at 804, 93 S.Ct. at 1825.

We agree with the district court that Paquin established a *prima facie* case. Paquin was fifty years old at the time of his termination and therefore a member of the age class (at least 40 years old) protected by the ADEA. 29 U.S.C. § 631(a). Like the district court, we believe that Paquin's twenty-year tenure at Fannie Mae and his series of promotions within the Department suffice to show that he was qualified for his position. Finally, there is no dispute that Paquin was terminated and replaced by a younger person.

Turning to the second step of the *McDonnell Douglas* framework, we conclude that Fannie Mae met its burden in articulating a legitimate non-discriminatory reason for its termination of Paquin. Fannie Mae claims that Paquin's termination resulted from substandard performance, as evidenced primarily by annual performance evaluations for the years 1991–1993. The evaluations indicated areas in which Paquin needed improvement. For example, the 1991 evaluation, while praising Paquin's performance in external matters, stated "Paul must devote considerably more effort to raising the level of his and his staff's 'internal' performance." JA 348. The 1991 evaluation concluded "Paul's challenge next year will be to bring his internal management performance up to a level approaching the exceptional performance he continues to post in the external arena with investors and analysts." JA 349. The 1992 evaluation stated that the year had been "a mixture of positives and negatives." JA 350. The positive aspects "were concentrated in the area of external investor relations, where Paul and his staff continue to get extremely high marks." *Id.* The negative aspect was that "Paul has not made as much progress as [the reviewer] had hoped for in what last year [the reviewer] had termed his 'internal' performance—departmental administration, attention to detail, planning and executing tasks in a timely fashion, and presentation design and speech writing." *Id.* The evaluation set out three specific areas targeted for improvement—

elimination of "repeated or blatant errors" in the Department's work, increased creativity and greater insight into investor preferences and valuation processes. JA 350–51. In each of the three areas the evaluation included a specific instance during the past year that, according to the reviewer, manifested Paquin's inadequate performance. The 1993 evaluation indicated that Paquin had failed to make much progress in two of the three areas and that in the third the reviewer postponed making a decision for another month. The evaluation was peppered with some strong criticisms. For example, a speech from Paquin's Department was described as "unsophisticated, unfocused, and ... contain[ing] not only overstatements and simplications [sic] but also outright inaccuracies." JA 352. The reviewer concluded with the statements "I believe you must take a much more disciplined approach to your job" and "I look forward to your doing substantially better in 1994." JA 353. Each annual evaluation also gave Paquin a numerical evaluation on a five point scale. In 1991 he received a 4, putting 14 of 21 senior vice presidents ahead of him. In 1992 he again received a 4, putting 14 of 23 senior vice presidents ahead of him. In 1993 he received a 3+, putting 22 of 25 senior vice presidents ahead of him.

In short the evaluations distinguished sharply between Paquin's performance in external and internal matters: Paquin appeared to excel in the former but was consistently deficient with respect to the latter. His numerical scores over the three years show him slipping from the middle to the bottom of executives at the senior vice president level. Paquin's performance deficiencies with respect to internal matters, as memorialized in the three year-end performance evaluations, suffice to meet Fannie Mae's burden of articulating a non-discriminatory reason for Paquin's termination.

Under the third step of *McDonnell Douglas*, Paquin must prove that Fannie Mae's proffered reason was a pretext for discrimination. 411 U.S. at 804, 93 S.Ct. at 1825. At this stage, if Paquin is unable to adduce evidence that could allow a reasonable trier of fact to conclude that Fannie

Mae's proffered reason was a pretext for discrimination, summary judgment must be entered against Paquin. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). The district court concluded that Paquin failed to meet his burden but we think that its grant of summary judgment was premature. In response to Fannie Mae's summary judgment motion Paquin moved, pursuant to Federal Rule of Civil Procedure 56(f)[2], to deny Fannie Mae's motion on the ground that further discovery was necessary. We review the district court's discovery rulings for abuse of discretion. *See, e.g., Brune v. IRS,* 861 F.2d 1284, 1288–89 (D.C.Cir.1988). In his motion Paquin argued, *inter alia,* that Fannie Mae had failed to meet its discovery obligations by refusing to produce performance evaluations for Fannie Mae executives at Paquin's level. Fannie Mae had produced a summary, covering the years 1990–1993, of the *numerical* ratings received by Fannie Mae's thirty-two senior vice presidents (including Paquin).[3] Paquin claims, however, that in order to respond to Fannie Mae's motion for summary judgment he needs the underlying narrative evaluations of the executives. We agree.

As discussed above, Fannie Mae defends the termination of Paquin based on his written performance evaluations, including his declining numerical ratings *vis à vis* other senior vice presidents. *If* Fannie Mae's proffered reason is a pretext for discrimination, then comparable evaluations of other executives at his level are precisely the type of evidence that might enable Paquin to make his case. *Cf. McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825 (evidence that white employees engaged in comparable activity to that used to justify failure to rehire black employee "especially relevant" to show proffered reason is pretext for discrimination). For example, were the evaluations to reveal that other executives received written evaluations less favorable than those of Paquin but nonetheless received higher numerical scores, this would tend to discredit Fannie Mae's explanation that Paquin was terminated for a legitimate non-discriminatory reason. Even under the deferential abuse of discretion standard, the performance evaluations are sufficiently important to Paquin's case to warrant reversal. *Cf. Hollander v. American Cyanamid Co.,* 895 F.2d 80, 84–85 (2d Cir.1990) (vacating award of summary judgment where district court refused to compel defendant to provide information about termination of employees similarly situated to plaintiff). Because we believe the district court erred in not granting Paquin's Rule 56(f) motion, we reverse the district court's grant of summary judgment and remand for further discovery.[4]

We emphasize two points on remand. First, discovery is to be limited to the production of performance evaluations of individuals at the senior vice president level at Fannie Mae for the years 1991–1993.[5] We

---

**2.** Rule 56(f), provides:
Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

**3.** Not all thirty-two senior vice presidents were with Fannie Mae for the entire four-year period. The number of senior vice presidents ranged from twenty in 1990 to twenty-five in 1993.

**4.** We affirm the district court's denial of Paquin's Rule 37(c) motion to recover discovery costs, including attorney's fees.

**5.** Although Fannie Mae's previously produced summary of numerical ratings also covered the year 1990, Fannie Mae is not required to produce performance evaluations for that year because it has relied only on Paquin's evaluations for the years 1991–1993. Indeed, the record manifests that Paquin did not even receive a written evaluation in 1990, so evaluations for other executives in that year would not assist Paquin in proving that Fannie Mae's proffered reason for terminating him was a pretext for discrimination. Fannie Mae has already produced the performance evaluations of senior vice presidents who left the company after 1990 and of one senior vice president who was demoted. These disclosures do not satisfy Fannie Mae's obligations. Given Fannie Mae's reliance on Paquin's unsatisfactory performance relative to all

are aware of the extensive history of discovery disputes in which the parties have been embroiled from the outset of the litigation. Aside from the performance evaluations already discussed, we affirm the district court's discovery rulings. We stress that it will *not* be open to Paquin on remand to seek additional discovery, the production of which the district court has previously refused to compel.[6]

■ Second, our remand does not automatically turn Paquin's wrongful termination claim into a jury issue. Although we believe summary judgment was premature given Fannie Mae's nondisclosure of performance evaluations of other senior vice presidents, summary judgment will be available to Fannie Mae upon renewed motion unless the evaluations indicate that Fannie Mae's reliance on Paquin's alleged poor performance was a pretext for discrimination. We have reviewed Paquin's opposition to Fannie Mae's summary judgment motion and are not persuaded by it—accordingly, were Paquin not entitled to limited additional discovery, we would affirm the district court. Because Fannie Mae has come forward with a legitimate non-discriminatory reason for Paquin's termination, the presumption that arises from Paquin's *prima facie* case "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). At this point all that is left to decide is "the ultimate question: whether plaintiff has proven 'that the defendant intentionally discriminated against [him].'" *Id.* (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981)). Paquin fired a salvo of arguments attempting to raise a triable issue of fact on the ultimate question of discrimination but produced insufficient evidence to permit a reasonable factfinder to come down on his side. We review Paquin's arguments briefly, construing, at the summary judgment stage, all evidence in the light most favorable to him as the non-moving party. *See United States v. General Motors Corp.,* 565 F.2d 754, 757 (D.C.Cir.1977).

■ Paquin first argues that the year-end performance evaluations insufficiently documented his alleged poor performance and that Fannie Mae was required to offer evidence of contemporaneous documents identifying specific deficiencies. The performance evaluations themselves, however, described general deficiencies bolstered by specific examples (for example, the 1992 evaluation identified a particular memorandum which, in the reviewer's opinion, was incomplete). We have already concluded that the three performance evaluations satisfied Fannie Mae's burden of proffering a legitimate nondiscriminatory reason. The burden then shifted to Paquin to produce evidence that could allow a reasonable factfinder to conclude that the evaluations were a pretext for discrimination. Paquin cannot meet his burden simply by claiming that Fannie Mae was required to produce *more* evidence of his poor performance. To accept Paquin's position would contradict the Supreme Court's clarification of the *McDonnell Douglas* framework in *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095, according to which the burden of persuasion remains at all times on the plaintiff. Thus once the defendant employer has articulated a legitimate non-discriminatory reason, "whatever its persuasive effect," *Hicks,* 509 U.S. at 511, 113 S.Ct. at 2749, the employer need not come forward with affirmative evidence showing its action was *not* discriminatory. Rather, it is the plaintiff who must offer evidence that the action *was* discriminatory. *See id.*

<hr/>

other senior vice presidents in the years 1991–1993, he is entitled to review the performance evaluations of the senior vice presidents who remained with the company as well as those who left. In recognition of the sensitive and confidential nature of similar information, the district court has already sealed, pursuant to the parties' stipulation, many of Fannie Mae's records; the 1991–1993 performance evaluations fall into the same category.

6. Because Fannie Mae attempts to justify Paquin's termination by comparing his performance to other senior vice presidents, we affirm the district court's decision declining to compel discovery regarding performance of individuals below the senior vice president level.

Paquin next relies on the fact that his numerical evaluations were correlated in Fannie Mae's computer system to letter descriptions. Thus a "4" meant "FE" or "frequently exceeds requirements." A "3" meant "SM" or "successfully meets requirements." Paquin argues that the labels raised a genuine issue of material fact as to his level of performance because they show that the three performance evaluations on which Fannie Mae relied judged him to "frequently exceed requirements" twice and to "successfully meet requirements" once. Whatever names one gives to the ratings, however, Paquin's performance placed him by the end of 1993 near the bottom of the heap of senior vice presidents.

Paquin also claims to have "rebutted each of the alleged deficiencies that Fannie Mae claimed justified his termination." Appellant's Opening Br. at 29. Rather than rebutting each of the numerous deficiencies, however, Paquin strains to create a triable issue of fact with respect to the two he raises on appeal.[7] First, he notes that one of the performance evaluations criticized the caliber of his memoranda. Paquin claims to have rebutted the alleged deficiency by pointing to the reviewer's failure during deposition to give an example of a deficient memorandum. A deponent's inability to recall specifics three years later does not rebut the performance deficiencies on which Fannie Mae relied, especially where, as here, the evaluation itself included an example of a deficient memorandum. JA 350–51 ("[The reviewer] would cite a memo that went to the Office of the Chairman on Freddie Mac's February press conference that neglected to mention the fact that Freddie Mac was proposing to increase the size of its mortgage portfolio."). Second, one of the evaluations included Paquin's alleged statement about Fannie Mae's CEO as an example of Paquin's failure to pay attention to detail. Paquin denied having made the statement. The alleged statement, however, was only one of three examples[8] of Paquin's failure to pay attention to detail. Accepting that Paquin did not make the statement, as we must on summary judgment, see *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), a reasonable factfinder could not conclude, in light of the other performance shortcomings detailed in the evaluations, that Fannie Mae's real reason for terminating Paquin was age-based.

Next Paquin claims that Fannie Mae's reliance on the three performance evaluations manifested procedural irregularities—and was therefore suspect—by unduly emphasizing the internal aspects of his job when his "performance objectives" were 90 per cent related to external matters. See *Krodel v. Young*, 748 F.2d 701, 709 (D.C.Cir.1984) (employer's failure to follow own procedures probative of discrimination), *cert. denied*, 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985); *Johnson v. Lehman*, 679 F.2d 918, 922 (D.C.Cir.1982) (same). As Fannie Mae points out, however, the "performance objectives" to which Paquin refers were developed in connection with a bonus plan and did not encompass the entire range of Paquin's responsibilities. It is true that Paquin's bonus plan objectives were used to evaluate him once in the past (in 1989). Assuming other employees continued to be evaluated entirely on their bonus plan objectives while Paquin was not, such a departure from procedure would still not be suspect. One of the asserted reasons for his termination is that Paquin failed to understand that external and internal matters must be considered in tandem. That is, if Paquin failed to communicate effectively developments in external matters to individuals inside the company, he was not doing his job properly. Paquin's bonus plan objectives, therefore, were themselves consistent with Fannie Mae's consideration of internal performance.

■ Paquin also attacked Fannie Mae's criticism of Paquin's lack of "creativity" and

---

7. Although Paquin took issue with other items in the performance evaluations below, we limit our discussion to the matters he argues on appeal.

8. Paquin was also criticized for "taking a $300 cab ride in spite of [the evaluator's] repeated admonitions … about unnecessary or excessive expenses" and "forwarding without review a memo … erroneously labeling [the evaluator] as guilty of 'selective disclosure.'" JA 353.

his "stubbornness." Paquin claims that the terms are age stereotypes that support an inference that Fannie Mae's termination decision was age-related. We have held that a decision not "derived from stereotypical preconceptions about older people[ ]," *Hayman v. National Academy of Sciences,* 23 F.3d 535, 539 (D.C.Cir.1994), does not support an inference of age discrimination. Thus Paquin must show that Fannie Mae thought he lacked creativity *because* he was older. But Paquin's evidence was limited to expert opinion testimony that factors such as "creativity" are sometimes based on age stereotypes. This is not enough. To prevail, Paquin must present evidence that the statements in fact spring from stereotypes. The context in which the statements were made—detailed evaluations of Paquin's performance of management tasks one would expect to require creativity and flexibility—indicates they were based not on stereotypes but on objective assessments of job performance.

■ Finally, Paquin argues that because he was more qualified than the person by whom he was replaced, a reasonable factfinder could conclude that Fannie Mae terminated him for discriminatory reasons. Although hiring a less qualified person can support an inference of discriminatory motive, *see Harding v. Gray,* 9 F.3d 150, 153–54 (D.C.Cir.1993), Paquin's argument misses the mark. Paquin grounds his claim of superiority on his performance in external matters. But Fannie Mae never contested his qualifications in external matters; instead it insisted that his replacement surpassed him on the internal side—the area in which Paquin failed to improve after repeated warnings.

## B. Paquin's Retaliation Claims

■ An employer may not retaliate against an employee for conduct protected under the ADEA. The three elements of a retaliation claim are (1) the employee's protected activity, (2) the employer's action that has an adverse impact on the employee and (3) a causal relationship between the protected activity and the adverse action. *See Pas-*

*ser v. American Chem. Soc'y,* 935 F.2d 322, 331 (D.C.Cir.1991).[9] Paquin claims Fannie Mae took two impermissible retaliatory actions against him. The first is Fannie Mae's withdrawal of Paquin's proposed severance package on March 17. The second is Fannie Mae's removal of Paquin from its payroll on the same date.

## 1. Fannie Mae's Withdrawal of the Severance Package

■ Paquin claims that Fannie Mae unlawfully retaliated by withdrawing its proposed severance package in response to Paquin's March 1, 1994 letter in which he claimed that his termination was based on age and that he was prepared to take legal action if acceptable severance terms were not offered. Fannie Mae argues first that the March 1 letter was not protected activity under the ADEA. We disagree. The statute provides:

> It shall be unlawful for an employer to discriminate against any of his employees ... because such individual ... has opposed any practice made unlawful by this section or because such individual ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(d). Paquin's March 1 letter asserting that his termination was unlawfully based on age fits within the statutory coverage of action that "oppose[s] any practice made unlawful by this section." *Cf. Connell v. Bank of Boston,* 924 F.2d 1169, 1178–79 (1st Cir.) (retaining counsel is protected activity under ADEA), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2828, 115 L.Ed.2d 997 (1991). Fannie Mae contends that if a demand letter is protected activity, then a disgruntled employee need only send such a letter and the employer must either capitulate or face a retaliation claim. Fannie Mae's argument is a red herring. A disgruntled employee's letter would be protected under the ADEA but the employee would be unable to establish

---

9. As with Paquin's wrongful termination claim, the law governing retaliation under the ADEA applies as well to Paquin's retaliation claims under the DCHRA. *See Goos v. National Ass'n of Realtors,* 715 F.Supp. 2, 3 (D.D.C.1989).

the necessary causal connection to make out a retaliation claim unless the employer took an adverse action *because* of the employee's protected activity and not for some legitimate reason—such as rejecting the employee's demand because it is unreasonable.

Next, Fannie Mae argues that its withdrawal of the severance package did not amount to adverse action because employees at Paquin's level were not entitled to severance benefits. An employer's withdrawal of a voluntary benefit, however, may constitute adverse action. For example, we have held that an employer's cancellation of a symposium honoring its employee, which it had no obligation to hold, constitutes adverse action. *See Passer,* 935 F.2d at 331. Similarly, Fannie Mae's withdrawal of its severance package offer, even assuming Fannie Mae had no *obligation* to provide it, was adverse action.

█ Although we conclude that Paquin's March 1 letter was protected activity and Fannie Mae's withdrawal of the severance package offer was adverse action, Paquin has failed to establish the causal connection necessary to establish his retaliation claim. The parties agree that Fannie Mae withdrew the severance package on March 17 but they disagree that a deadline to accept or reject it existed. Fannie Mae claims that its offer expired on March 16 and, when Paquin failed to accept by that date, it withdrew the offer because it had expired. Paquin, however, disputes the March 16 deadline and maintains that Fannie Mae took back the offer because of his protected activity. Irrespective of the deadline, Paquin has not established a causal relation between the March 1 letter and the March 17 withdrawal of the severance package. Between March 1 and March 17 the parties engaged in negotiations involving, among other things, whether Paquin could receive the severance package tax free. According to the February 14, 1994 termination letter in which Paquin was first informed about the severance package, Paquin was given until March 8 to accept the agreement. That there was *some* extension of the offer—either to March 16 (according to Fannie Mae) or indefinitely (according to

Paquin)—can be inferred from Fannie Mae's affirmative withdrawal of the offer on March 17. In light of the 17–day lapse between Paquin's demand letter and Fannie Mae's withdrawal, their continued negotiations and the undisputed extension of the offer for at least 8 days, we reject Paquin's claim that Fannie Mae's adverse action was caused by his protected activity. We therefore affirm the district court's grant of summary judgment to Fannie Mae on this claim.

### 2. Paquin's Removal from the Payroll

█ Paquin filed a claim with the EEOC on March 17, 1994. That day, Fannie Mae informed Paquin by letter that he had been removed from the payroll effective March 16, 1994 because he had failed to accept Fannie Mae's severance offer before it expired. Paquin's filing of a claim constitutes protected activity under the ADEA. Removing Paquin from the payroll is an adverse action. The only issue is whether Paquin produced sufficient evidence of a causal connection between the two to survive summary judgment. Fannie Mae contends that Paquin had already been terminated on February 14 and thus the adverse action could not have been *caused* by subsequent protected activity. While Paquin was notified of his termination on February 14, 1994, the record is clear that Paquin remained on the payroll until March 17, 1994. Whatever immediate consequences accompanied the termination notice, they did not include removal from the payroll. Instead Paquin did *not incur* that *additional* penalty until March 17. The adverse action occurred on the same day the protected activity occurred and suffices to raise at least the inference that the two events were causally connected. It may be, as Fannie Mae contends, that it removed Paquin from the payroll on March 17 because he failed to accept the severance offer. Paquin, however, contends that there was no deadline and at the summary judgment stage we must accept Paquin's version of the facts. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. We therefore reverse the district court's grant of summary judgment and re-

mand for trial on Paquin's retaliation claim regarding his removal from Fannie Mae's payroll.[10]

## C. Expert Witness Fees

■ Paquin challenges the magistrate judge's order declining to treat two of Paquin's witnesses, Alan Bortel and Cecil Godman, as experts eligible for fee and expense reimbursement as provided by Federal Rule of Civil Procedure 26(b)(4)(C).[11] The magistrate judge concluded that Bortel's and Godman's deposition testimony was lay opinion based on their personal knowledge of Paquin's circumstances. Paquin claims the magistrate judge erred because an expert witness may also have personal knowledge of the facts of a case. *See, e.g., Holbrook v. Lykes Bros. S.S. Co.,* 80 F.3d 777 (3d Cir. 1996) (allowing expert testimony of physician with personal knowledge of party). The magistrate judge, however, concluded that Bortel and Godman had *only* personal knowledge lacking "scientific, technical, or other specialized knowledge [which] will assist the trier of fact" and thus did not qualify as experts under Federal Rule of Evidence 702.[12]

\* \* \*

The district court's grant of summary judgment on Paquin's termination claim and second retaliation claim (removal from payroll) are reversed. The district court's grant of summary judgment on the first retaliation claim (withdrawal of severance package) and the magistrate judge's denial of expert fee reimbursement are affirmed.

*So ordered.*

---

10. In the parties' briefs and at oral argument Paquin's second retaliation claim purportedly included the withdrawal of severance benefits as well as Paquin's removal from the payroll. In Paquin's opposition to summary judgment, however, he limited the second claim to his removal from Fannie Mae's payroll. Moreover, the district court's disposition is consistent with Paquin's opposition to summary judgment. *Paquin v. Federal Nat'l Mortgage Ass'n,* 935 F.Supp. 26, 35–36 (D.D.C.1996).

11. Rule 26(b)(4)(C) provides:

Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under this subdivision; and (ii) with respect to discovery obtained under subdivision (b)(4)(B) of this rule the court shall require the party seeking discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.

12. Rule 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.