12 F.Supp.2d 15 (1998)
Paul P. PAQUIN, Plaintiff,
v.
FEDERAL NATIONAL MORTGAGE ASSOCIATION, Defendant.
No. CIV. A. 94-1261 SSH.
United States District Court, District of Columbia.
May 8, 1998.
*16 Christopher G. Makaronis, Bell, Boyd & Lloyd, Washington, DC, for Plaintiff.
Steven Gordon Reade, Kenneth I. Juster, Arnold & Porter, Washington, DC, for Defendant.

MEMORANDUM ORDER
STANLEY S. HARRIS, District Judge.
This matter is before the Court on defendant's motion for summary judgment, plaintiff's opposition thereto, and defendant's reply. Upon consideration of the entire record, the Court grants in part and denies in part defendant's motion. Although "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule ... 56," the Court nonetheless sets forth its reasoning. See Fed.R.Civ.P. 52(a).
Plaintiff, currently 53 years old, filed a complaint alleging that the Federal National Mortgage Association ("Fannie Mae") violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., and the District of Columbia Human Rights Act ("DCHRA"), D.C.Code §§ 1-2501 et seq., by terminating his employment due to his age and by taking two retaliatory actions against him.[1] Before his termination, plaintiff was a senior vice president in defendant's Investor Relations Department. By Opinion and Order dated July 31, 1996, this Court granted summary judgment in defendant's favor on all of plaintiffs claims, and plaintiff appealed.
The Court of Appeals agreed with this Court that summary judgment was appropriate on plaintiff's first retaliation claim. Paquin v. Federal Nat'l Mortgage Ass'n, 119 F.3d 23, 31-32 (D.C.Cir.1997). The court further held, however, that plaintiff was entitled to the production of performance evaluations of the senior vice presidents at Fannie Mae from 1991-1993, and that plaintiff produced sufficient evidence of a causal connection between his being removed from the payroll and the filing of his EEOC claim to survive summary judgment on his second retaliation claim. See id. at 26-33. The court remanded plaintiff's termination claim for further discovery and his second retaliation claim for trial. Id. at 28, 32-33. Defendant produced the 1991-1993 performance evaluations of its other senior vice presidents and then filed a second motion for summary judgment.[2]
Summary judgment may be granted only if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a summary judgment motion, all evidence and the inferences to be drawn from it must be considered in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However if the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

*17 I. Plaintiff's Wrongful Termination Claim[3]
The sole issue before the Court related to plaintiff's wrongful termination claim is whether the performance evaluations of other senior vice presidents at Fannie Mae indicate that defendant's proffered non-discriminatory reason for firing plaintiff  his poor performance  is mere pretext.[4]See Paquin, 119 F.3d at 26-31; see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (articulating the three-step burden-shifting framework for ADEA cases). Defendant contends that the newly-produced performance evaluations do not support plaintiff's pretext argument, and thus summary judgment should be granted in defendant's favor. See Paquin, 119 F.3d at 29. Plaintiff argues that the performance evaluations bolster his claim of age-based termination because (1) younger executives received written evaluations less favorable than plaintiff's but received higher numerical scores; (2) plaintiff's written performance reviews were better than those of younger executives who were not terminated; (3) other senior vice presidents with identical ratings were not terminated for poor performance; and (4) plaintiff's evaluations were less specific than those of other senior vice presidents. See Pl.'s Opp. to S.J. at 7-18. The Court addresses each argument in turn.
When the Court of Appeals remanded plaintiff's termination claim for further discovery, it suggested that if "the evaluations [were] to reveal that other executives received written evaluations less favorable than those of Paquin but nonetheless received higher numerical scores, this would tend to discredit Fannie Mae's explanation that Paquin was terminated for a legitimate nondiscriminatory reason." Paquin, 119 F.3d at 28. Plaintiff contends that the evaluations of three senior vice presidents younger than plaintiff show this type of discrepancy.[5] For example, plaintiff claims that one senior vice president's evaluations were similar to his and yet that senior vice president received a "4+" for the three years in question while plaintiff received two scores of "4" and a "3+." The Court disagrees with plaintiff's characterization of this other senior vice president's evaluations. Although that individual's evaluations, like plaintiff's, contained both positive and negative comments, the other executive's negative comments were of a different character than plaintiff's. The major criticism of the other executive was that the executive was too hard-working and personally taking on too much of the department's workload. FM 5074-79. Plaintiff, on the other hand, was criticized for poor communication, inattention to detail, and poor judgment on internal matters. FM 80-91. Moreover, the other vice president showed improvement, particularly in the area of staffing, but plaintiff's evaluations show no improvement. A comparison of the evaluations of the other two senior vice presidents cited by plaintiff also do not support his contention that he received lower numerical scores for similar written evaluations.[6]
*18 Plaintiff next contends that his written appraisals were better than those of executives who were not terminated, and that other executives with identical numerical ratings as his were not terminated, indicating that he must have been terminated because of his age. The Court rejects plaintiff's contention. Plaintiff's written appraisals were not better over the 1991-1993 period than the evaluations of the three other senior vice presidents that plaintiff cites in his brief. Although two of those vice presidents each had one very negative evaluation in the relevant three-year period, their subsequent evaluations show that each vastly improved in their weak areas in the subsequent year. Compare FM 5009-11 with 5012-13; FM 5034-35 with 5036-37.[7] Plaintiff, on the other hand, was consistently criticized for his internal performance and never showed any signs of improvement in that area. See FM 86-91. Moreover, the Court rejects plaintiff's contention that the fact that other officers with identical numerical ratings as plaintiff's were not terminated for poor performance creates a genuine issue for trial. In fact, two of the senior vice presidents who were not terminated but who had identical or lower numerical scores than plaintiff were older than plaintiff. FM 1910-12; FM 2086-87; see also Rea v. Martin Marietta Corp., 29 F.3d 1450, 1459 (10th Cir.1994).
Finally, plaintiff contends that the method used to evaluate him differed from that of other senior vice presidents because his appraisals "provided no clear specification of what was desired" while the evaluations of other senior vice presidents did. An examination of plaintiff's evaluations, however, contradicts this contention.[8] Therefore, since the performance evaluations of the other senior vice presidents do not provide evidence to support plaintiff's claim of wrongful agebased termination, defendant's motion for summary judgment on the termination issue is granted.

II. Plaintiff's Remaining Retaliation Claim

Defendant also requests that the Court grant summary judgment on plaintiff's claim that defendant retaliated against him by removing his name from the payroll on March 17, 1994, in response to plaintiff's filing a claim with the EEOC on that same day. In support of its motion, defendant proffers the affidavit of Douglas M. Bibby, who sent the March 17 letter informing plaintiff he had been removed from the payroll, and the affidavit of Anthony Marra, defendant's Deputy General Counsel, who drafted the March 17 letter. Both men testify that when they drafted and sent the March 17 letter to plaintiff, they were not aware of his EEOC complaint. Bibby II Aff. ¶ 7; Marra Aff. ¶¶ 4-5; see also Passer v. American Chem. Soc'y, 935 F.2d 322, 331 (D.C.Cir.1991) (noting that the third required element of a retaliation claim is a causal relationship between the protected activity and the adverse action). Plaintiff objects to defendant's motion for summary judgment because the Court of Appeals "remand[ed] for trial on Paquin's retaliation claim regarding his removal from Fannie Mae's payroll." Paquin, 119 F.3d at 32-33.
The Court disagrees with plaintiff that the Court of Appeals' language remanding the retaliation claim for trial precludes the Court from considering defendant's motion for summary judgment, since defendant has proffered new evidence not considered on appeal. See Piambino v. Bailey, 757 F.2d 1112, 1120 (11th Cir.1985) (stating that an appellate decision on an issue must be followed in all subsequent trial court proceedings "unless the presentation of new evidence ... dictates *19 a different result"), cert. denied, 476 U.S. 1169, 106 S.Ct. 2889, 90 L.Ed.2d 976 (1986). However, in light of the Court of Appeals' previous opinion, the Court concludes that it is precluded from granting defendant's motion for summary judgment on this issue, even in light of the new evidence.
On appeal, defendant contended that it removed plaintiff from the payroll because he failed to accept defendant's severance package by March 16, 1994. Paquin, 119 F.3d at 32. Plaintiff countered that there was no deadline. Id. The Court of Appeals held that plaintiff's contention that there was no deadline, taken together with the close proximity of plaintiff's removal from the payroll and the filing of his EEOC complaint, was sufficient evidence of a causal connection between the two to survive summary judgment. Id. If the Court of Appeals was unwilling to accept defendant's sworn statement that it removed plaintiff from the payroll on March 17 because he failed to accept the severance offer (notwithstanding the fact that plaintiff already had been terminated, so his ultimate removal from the payroll appears to have been just a matter of timing), this Court must conclude that the appellate court's decision would not change in light of defendant's sworn statements that it did not know about plaintiff's EEOC complaint when it sent the March 17 letter. Something must have motivated defendant to remove plaintiff from the payroll on March 17, and because the Court must accept as true that there was no deadline for plaintiff to accept the severance package, see id., defendant's statements that its affected officials did not know about plaintiff's EEOC complaint, absent any other explanation why it removed plaintiff from the payroll on the same date, cannot eliminate the issue of material fact held by the Court of Appeals to exist.
Accordingly, it hereby is
ORDERED, that defendant's motion for summary judgment is denied with respect to plaintiff's second claim of retaliation.[9] It hereby further is
ORDERED, that summary judgment is granted in defendant's favor on plaintiff's wrongful termination claim under the Age Discrimination in Employment Act and the District of Columbia Human Rights Act.
SO ORDERED.
NOTES
[1] Defendant allegedly (1) withdrew plaintiff's severance package in response to a March 1, 1994, letter from plaintiff's lawyer threatening legal action; and (2) removed plaintiff from the payroll on March 17, 1994, in response to plaintiff's filing a claim with the Equal Employment Opportunity Commission ("EEOC") on the same date.
[2] The factual background has been previously set forth in great detail both in this Court's July 31, 1996, Opinion and in the Court of Appeals' July 25, 1997, decision; thus the Court limits itself to a brief statement of the facts.
[3] The same analysis applies to ADEA and DCHRA claims for wrongful termination and retaliation, and thus the Court refers only to plaintiff's ADEA claims with the understanding that the result is the same for plaintiff's DCHRA claims. See Paquin, 119 F.3d at 26, 31 nn. 1 & 9.
[4] Plaintiff devotes a significant portion of his brief to explaining alternative theories by which the Court may conclude that defendant's stated reason for firing him is pretextual. See Pl.'s Opp. to S.J. at 20-35. All of these theories have previously been presented to and rejected by this Court, see July 31, 1996, Opinion, at 12-15, and/or the Court of Appeals. See Paquin, 119 F.3d at 29-31 (reviewing all plaintiff's attempts to establish pretext and stating that his theories were not persuasive and "accordingly, were [plaintiff] not entitled to limited additional discovery, we would affirm the district court"). The Court thus limits its consideration to whether "the [other senior vice presidents' performance] evaluations indicate that Fannie Mae's reliance on Paquin's alleged poor performance was a pretext for discrimination." See Paquin, 119 F.3d at 29.
[5] In order to protect the confidentiality of defendant's evaluation process, the Court does not refer to the other senior vice presidents by name.
[6] One individual received the same score for 1991 and 1992 as plaintiff, based on a similar written evaluation. See FM 5098-5101. The other individual had been a senior vice president for only one year, and the evaluation for that year did not contain negative comments as serious as those in plaintiff's evaluation. See FM 5072-73.
[7] The third vice president's poor performance also was followed by an improved performance the next year, but it is unclear whether the improvement was in the weak areas cited by the previous evaluation because the vice president's supervisor did not complete a written evaluation. See FM 2086; Bibby Dep. at 242.
[8] For example, plaintiff's evaluations suggested that, in order to improve his internal performance, he should do such things as ensuring that department administration is performed at a higher level by "either a less decentralized departmental organization, less senior staff time away from the office, or both"; paying more attention to detail and cutting down on inaccuracies in his work; and avoiding impulsive statements. FM 87, 90-91.
[9] If the parties find it difficult to conceptualize how this case actually will be tried, they are not alone.