**Marvin W. HALL, Appellant,**

v.

**GIANT FOOD, INC., Appellee.**

**No. 98–7112.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 22, 1999.

Decided May 25, 1999.

Stephan J. Boardman argued the cause and filed the brief for appellant. Edward C. Golumbic entered an appearance.

Edward R. Levin argued the cause and filed the brief for appellee.

Before: EDWARDS, Chief Judge, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the Court filed by Chief Judge HARRY T. EDWARDS.

Separate statement filed by Circuit Judge KAREN LeCRAFT HENDERSON, concurring in the result.

HARRY T. EDWARDS, Chief Judge:

On August 18, 1995, Marvin W. Hall, who was employed as a tractor trailer driver with Giant Food, Inc. ("Giant"), was discharged by Giant for repeated acts of misconduct. A grievance was filed on Hall's behalf by his union, Local 639 of the International Brotherhood of Teamsters ("Local 639"), and the matter was subsequently submitted to arbitration. The arbitrator converted Hall's discharge to a disciplinary suspension and ordered his reinstatement without back pay.

Following his reinstatement, Hall filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging for the first time that his termination had been motivated by age discrimination. Hall's claim was based on an alleged discussion that he had with a supervisor shortly after his return to work. According to Hall, the supervisor told him that he

was too old for the job and had been terminated for that reason. Hall, who was forty years old at the time of his termination, then sued Giant under the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. §§ 621–34, alleging that Giant terminated him because of his age. The District Court granted summary judgment for Giant, and we now affirm.

Hall cannot establish discrimination, either directly or indirectly, because he has failed to raise a triable issue of discriminatory intent on the part of Giant, or to create a jury question as to Giant's asserted grounds for discharging him. This is a run-of-the-mill case concerning employee misconduct and the appropriateness of the disciplinary penalty imposed therefor. The issues in dispute here do not implicate the federal laws against discrimination. The matter was properly submitted to arbitration and resolved there. Hall may be dissatisfied with the arbitrator's judgment, but his mere displeasure does not afford him a further avenue of redress in the federal courts.

## I. BACKGROUND

On June 27, 1988, Giant hired Hall as a tractor trailer driver. Until 1994, Hall apparently performed his job without incident. Beginning in late 1994, however, problems began to arise. Between November 1994 and July 1995, Hall was subject to disciplinary actions for failure to properly notify the company when absent, driving company equipment in an unsafe manner, and wasting time on the job.

The incident that resulted in Hall's termination occurred on August 4, 1995, when Lorin Turnblacer, a Giant driver supervisor, observed a Giant truck illegally parked in a right turn lane off of its designated route. Turnblacer discovered that Hall had been shopping for motorcycle parts without recording the break on his "trip card." Company policy requires all drivers to maintain detailed records of the start and end times of all breaks and activities occurring during the course of their work shifts, and to record the times and locations of breaks at the start of those breaks. Company policy further prohibits shopping on company time and traveling off-route without an authorized reason. Abuse of these policies may subject a driver to dismissal.

Following the August 4, 1995 incident, Turnblacer suspended Hall, citing violations of Giant's break and off-route policies. On August 7, 1995, Turnblacer reported the facts of the incident to Pamela Sanford, Giant's General Manager of Transportation. Sanford, in turn, provided written notice of Hall's suspension to union officials at Local 639. Sanford also relayed the information to Chris Balodemas, Giant's Director of Transportation, Traffic and Fleet Maintenance. Although Sanford is responsible for disciplining drivers who do not comply with company policies and procedures, she does not have the authority to terminate drivers. Upon review, Balodemas determined that Hall's violation of multiple company policies warranted dismissal. On August 18, 1995, following a grievance meeting between Hall, Giant, and Local 639, Giant terminated Hall. Hall was forty years old at the time.

On August 21, 1995, in accordance with the collective bargaining agreement between Giant and Local 639, union officials filed a grievance contesting Hall's termination. Giant attempted to settle the matter by offering to reinstate Hall if he would sign a conditional reinstatement agreement, but Hall declined this offer on three separate occasions. Negotiations between the parties were ultimately unsuccessful, and the matter proceeded to arbitration. After "careful consideration," the neutral arbitrator was "unable to conclude that the discharge was for good cause," but was also "unable to conclude that [Hall's] offense . . . was 'minor.'" Arbitration Statement and Award at 2, *reprinted in* Supplemental Appendix ("S.A.") 27. The arbitrator believed that, although Hall had violated company rules, the penalty of discharge was too severe. Accordingly, he

directed Giant to reinstate Hall with seniority, but denied Hall's request for back pay or benefits, instead treating the time off as a "disciplinary suspension." *Id.*

On May 7, 1996, following his reinstatement, Hall filed a charge with the EEOC, alleging for the first time that his termination had been motivated by age discrimination. Hall's claim was based on a discussion that he had with Sanford shortly after his return to work. According to Hall's affidavit, Sanford "informed [him] that the true reason for [his] termination was [his] age." Hall Affidavit ¶ 6, *reprinted in* Appendix ("App.") 24. Sanford allegedly told Hall that he was "too old" for the job, and that she wanted him "to resign because [she] want[ed] younger and safer drivers in here." Transcript of Deposition Testimony at 41, *reprinted in* S.A. 90. The EEOC issued a right-to-sue letter.

Hall then filed suit in District Court under the ADEA, alleging, *inter alia*, that Giant terminated him because it wanted to replace him with younger drivers. On May 27, 1998, the District Court granted Giant's motion for summary judgment. *See Hall v. Giant Food Inc.*, No. 97–470 (D.D.C. May 27, 1998) ("Memorandum"), *reprinted in* App. 4–12. The court found that Hall had established a prima facie case of age discrimination, that Giant had advanced legitimate nondiscriminatory reasons for Hall's termination, and that Hall had failed to create a jury question as to whether Giant's stated reasons were pretextual. *See id.* at 6, *reprinted in* App. 9. In the court's view, the remark allegedly made by Sanford was of only limited probative value, because it was made eight months after the decision to terminate Hall, and because Balodemas, not Sanford, made the final decision to terminate Hall. *See id.* This appeal followed.

## II. ANALYSIS

### A. Standard of Review

In reviewing a district court's grant of summary judgment, we consider the evidence *de novo.* *See Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C.Cir. 1998) (en banc). "[A] party is only entitled to summary judgment if the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact." *Id.*; *see* FED. R. CIV. P. 56(c). "[S]ummary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aka*, 156 F.3d at 1288 (internal quotation marks omitted).

### B. Age Discrimination Claim

■ The ADEA makes it "unlawful for an employer . . . to discharge . . . or otherwise discriminate against any individual [who is at least forty years old] . . . because of such individual's age." 29 U.S.C. § 623(a)(1) (1994); *see id.* § 631(a). In analyzing a discrimination claim under the ADEA, we apply the framework developed in the context of Title VII litigation, *see Paquin v. Federal Nat'l Mortgage Ass'n*, 119 F.3d 23, 26 (D.C.Cir.1997)—that is, where direct evidence of discriminatory intent is not available, a party may establish unlawful age discrimination by relying on the familiar burden-shifting scheme first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ Under the *McDonnell Douglas* framework, the employee must first establish a prima facie case of prohibited discrimination. *See Aka*, 156 F.3d at 1288. In the ADEA context, Hall had to show that he belongs in the statutorily protected age group, he was qualified for the position, he was terminated, and he was disadvantaged in favor of a younger person. *See Paquin*, 119 F.3d at 26. If the employee succeeds in establishing a prima facie case, the burden "shifts to the employer to articulate legitimate, nondiscriminatory reasons for the challenged employment decision." *Aka*, 156 F.3d at 1288. The employer must " 'clearly set forth,

through the introduction of admissible evidence,' reasons for its actions which, *if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). If the employer does so, the presumption of discrimination raised by the prima facie showing is rebutted and "drops from the case." *Burdine,* 450 U.S. at 255 & n. 10, 101 S.Ct. 1089. At that point, the employee "has an opportunity to discredit the employer's explanation," *Aka,* 156 F.3d at 1288, by demonstrating that the proffered reasons are a mere pretext for discrimination, *see Paquin,* 119 F.3d at 26–27. The employee retains throughout the "ultimate burden of persuading the court that [he] has been the victim of intentional discrimination." *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089.

In the proceedings before the District Court, Hall relied on a single piece of evidence in support of his claim of age discrimination—namely, Sanford's alleged remark that Hall's age was the "true reason" for his termination, and that Hall was "too old" for the job of tractor trailer driver. In Hall's view, this remark constitutes both direct evidence of age discrimination and indirect evidence that Giant's stated reasons for his discharge were pretextual. *See* Brief for Appellant at 8. Although Sanford denies making the alleged remark, *see* Sanford Declaration ¶ 13, *reprinted in* App. 17, for the purposes of summary judgment, we must accept as true the allegations contained in Hall's affidavit. *See Greene v. Dalton,* 164 F.3d 671, 674 (D.C.Cir.1999) (holding that district court's grant of summary judgment for defendant invaded jury's province, because plaintiff's sworn affidavit was sufficient to support verdict against defendant, and credibility determinations are within "exclusive domain" of fact finder). We conclude that the District Court properly granted summary judgment for Giant, because, even if Sanford made the remark, Hall cannot prove discrimination either directly or indirectly based solely on that evidence.

The District Court perceived this case as one proceeding under the *McDonnell Douglas* framework of indirect proof. The court found that, construing the facts in the light most favorable to plaintiff, Hall could establish the initial presumption of age discrimination based on a prima facie showing that he was forty years old at the time of his termination, was qualified for and performing the duties of his driver position, was terminated from that position, and was disadvantaged with respect to younger drivers who were retained in Giant's employ. *See* Memorandum at 6, *reprinted in* App. 9. The court further found that Giant effectively rebutted Hall's prima facie case by demonstrating that Hall had been disciplined on several occasions, including the instance directly leading to his discharge, and that several of the policies at issue expressly provided for termination in the event of violations. *See id.* Finally, the court determined that Hall had failed to demonstrate that Giant's asserted basis for terminating him was a pretext for discrimination, because Hall's only evidence was the remark allegedly made by Sanford during a discussion that occurred eight months after Hall was terminated, and was not made by the party who made the decision to discharge Hall. *See id.*

There is absolutely nothing in this record to indicate that Hall was disadvantaged in favor of a younger person; thus, there is a question as to whether Hall even made out a prima facie case. The District Court found that Hall was disadvantaged with respect to younger drivers who were retained in Giant's employ, but this finding is baffling on this record. Hall was reinstated pursuant to arbitration, so he did not lose his job. He lost wages and benefits during the time of his

disciplinary suspension, but these losses indisputably resulted from Hall's misconduct, not his age. In other words, the arbitrator found that Hall was guilty of misconduct as alleged by Giant, so a disciplinary suspension was found fully justified. Claims of age discrimination were never even raised in arbitration. We need not pursue this line of inquiry, however, for the parties' arguments on appeal do not concern the sufficiency of Hall's prima facie case and, indeed, the District Court proceeded to consider the full merits of Hall's discrimination claim and Giant's rebuttal evidence. *See United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant."); *see also Hayman v. National Academy of Sciences,* 23 F.3d 535, 537 (D.C.Cir.1994) (holding, on review of district court's grant of judgment notwithstanding the verdict, that once court had allowed in employer's full rebuttal evidence, relevant question turned on sufficiency of employee's evidence of discrimination as opposed to sufficiency of her prima facie case); *Debs v. Northeastern Ill. Univ.,* 153 F.3d 390, 395–96 (7th Cir.1998) (determining, on review of district court's grant of summary judgment, that where parties were not disputing whether employee made out prima facie case, court would assume that prima facie requirements were satisfied and proceed to question whether employer's proffered reasons were pretextual). We will therefore indulge the fiction that Hall made out a prima facie case and review the case on the same terms as did the District Court.

▪ Assuming for the purposes of our analysis that the District Court was correct with regard to its assessment of Hall's prima facie case and Giant's rebuttal thereof, any presumptions arising under the burden-shifting scheme are no longer a factor in this case. *See Burdine,* 450 U.S. at 255 & n. 10, 101 S.Ct. 1089. We are left, then, with the question whether Hall could meet his ultimate burden of demonstrating—whether directly or indirectly—that Giant intentionally discriminated against him:

> [T]he focus of proceedings at trial (and at summary judgment) will be on whether the jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment).

*Aka,* 156 F.3d at 1289. "[T]he court must consider all the evidence in its full context in deciding whether the plaintiff has met his burden of showing that a reasonable jury could conclude that he had suffered discrimination and accordingly summary judgment is inappropriate." *Id.* at 1290.

▪ We have no doubt that, considering "the total circumstances of the case," *Aka,* 156 F.3d at 1291, Hall's evidentiary proffer is insufficient to survive Giant's motion for summary judgment, whether it is advanced as direct evidence of discriminatory intent or indirect evidence of pretext for discrimination.

First, the record is clear that Balodemas, not Sanford, made the decision to terminate Hall. Sanford did not have the authority to fire Hall; indeed, Hall offered no evidence to establish that Sanford was even involved in the decisionmaking process. To be sure, Sanford conveyed to Balodemas the information in connection with Hall's August 4, 1995 suspension. Sanford, however, merely communicated the facts as relayed to her by Turnblacer. Hall offers no evidence that Sanford rec-

ommended to Balodemas that Hall be discharged, that Sanford was sufficiently involved to be aware of Balodemas's reason for terminating Hall, or that Sanford had the ability to influence Balodemas's decision. *See Griffin v. Washington Convention Ctr.,* 142 F.3d 1308, 1311–12 (D.C.Cir. 1998) ("[E]vidence of a subordinate's bias is relevant where the ultimate decision maker is not insulated from the subordinate's influence."); *cf. Shorette v. Rite Aid of Maine, Inc.,* 155 F.3d 8, 13–15 (1st Cir.1998) (pointing to lack of evidence that managers who allegedly made discriminatory remarks participated in employer's discharge decisions). It appears from the record that Balodemas made an independent assessment of Hall's conduct and concluded that Hall's violations of multiple Giant employment policies warranted his termination. *See* Balodemas Declaration ¶ 3, *reprinted in* App. 20–21. Hall offers nothing to refute this version of events, and thus, his reliance on Sanford's remark proves at most that Sanford herself harbored a bias completely unrelated to Giant's decision to terminate Hall.

Second, Sanford's alleged remark was made shortly after Hall had been reinstated to his position, and a full eight months after the original decision to terminate him had been made. This fact tends to isolate the comment reflecting age bias from the relevant decision to terminate Hall. Although the temporal gap is not necessarily dispositive in itself, it obscures any conceivable nexus between Sanford's statements and the challenged employment decision. *Cf. Indurante v. Local 705, Int'l Bhd. of Teamsters,* 160 F.3d 364, 367 (7th Cir.1998) (considering, *inter alia,* the fact that statements allegedly reflecting age discrimination were made sixteen months before employee's termination).

Third, Hall does not even attempt to impugn Giant's stated reason for terminating him. At the time of the events leading to Hall's termination, the relevant employment policies were clearly established and were made known to Giant employees in both oral and written form. Giant's break, trip card, and off-route policies expressly provided that violations constituted grounds for dismissal. These policies were cited by Turnblacer as the reason for Hall's initial suspension, and by Balodemas as the reason for Hall's ultimate termination. These policies were also the subject of the arbitration proceedings concerning Hall's discharge—proceedings during which the subject of Hall's age did not even arise. Moreover, as a factual matter, Hall does not dispute that he violated these policies. Under these circumstances, we find that Giant's stated justification for Hall's discharge is credible and unrefuted.

Finally, Giant offered evidence that compellingly demonstrates a favorable record of hiring and retaining drivers over the age of forty. We have stated that "[w]here an employer has a strong record of equal opportunity employment, any inference of discrimination arising from the discrediting of the employer's explanation may be a weak one, and in some cases not strong enough to let a reasonable factfinder conclude that discrimination has occurred at all." *Aka,* 156 F.3d at 1291. Here, Giant's hiring records show that, of the 317 union drivers employed by Giant in August 1995, 243—approximately three quarters—were older than Hall. Likewise, as of April 1997, 229 of 309—about the same percentage—were older than Hall. This evidence tends to refute any implication that Giant was attempting to purge its force of older employees. *Cf. Greene v. Safeway Stores, Inc.,* 98 F.3d 554, 561 (10th Cir.1996) (permitting plaintiff to introduce evidence that other employees in protected age class were replaced, because "evidence concerning the make-up of the employment force and events which occurred after plaintiff's termination were entirely relevant to the question of whether or not age was one of the determinative reasons for plaintiff's termination").

In short, whatever claims Hall had to bring were raised, heard, and resolved in arbitration pursuant to the terms of the collective bargaining agreement between Giant and Local 639. The matter ended with the issuance of the arbitrator's award. The issues in dispute here do not implicate the federal laws against discrimination.

### III. CONCLUSION

For the reasons stated above, we affirm the District Court's grant of summary judgment for Giant.

*So ordered.*

**KAREN LeCRAFT HENDERSON,** Circuit Judge, concurring:

While I concur in the result, I write separately to point out that the first sentence of paragraph 6 of Hall's affidavit (as Hall's lawyer—who acknowledged he drafted the affidavit—conceded at oral argument), which avers that Sanford "in-formed [Hall] that the true reason for [Hall's] termination was [Hall's] age, not the other reasons raised earlier," is Hall's lawyer's gloss on Sanford's actual words quoted in the next two sentences of paragraph 6—that he was "too old," that she wanted "younger," safer drivers and that he "had to go." Hall Aff. ¶ 6, *reprinted in* App. 24. Hall, then, does not aver that Sanford in fact said "the true reason for [his] termination was [his] age," *id.,* and there is no other evidence of discrimination in the record. Accordingly, Hall failed to establish a *prima facie* case of discrimination and I find it unnecessary to go further.