Kenneth **MILLER**, Plaintiff,

v.

Richard **LYNG**, Defendant.

Civ. A. No. 86–2053.

United States District Court,
District of Columbia.

May 12, 1987.

---

George M. Chuzi, Kalijarvi & Chuzi, Washington, D.C., for plaintiff.

Patricia D. Carter, Washington, D.C., for defendant.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This is an age discrimination case brought pursuant to the Age Discrimination in Employment Act of 1974 ("ADEA"), 29 U.S.C. § 633a. Plaintiff Kenneth Miller, age 55, alleges that he was not selected to be the Field Office Manager ("FOM") for the Department of Agriculture ("DOA") in Peoria, Illinois, because of his age; the person selected for the job is now 43 years old, twelve years the plaintiff's junior. After a full trial on the merits, I find for the plaintiff for the reasons stated herein.

## I. Factual Background

Plaintiff has worked as an Agricultural Commodity Grader for the Department of Agriculture's Federal Grain Inspection Service ("FGIS") since 1959. He was promoted to the position of Supervisory Agricultural Commodities Grader (GS–11) in the Peoria, Illinois Field Office in July of 1977. In that capacity, the plaintiff functioned as the assistant to the Peoria Field Office Manager. The Field Office Manager, Gail Nunn, retired effective January 3, 1986, and the plaintiff was designated the Acting FOM until the vacancy could be filled.

Plaintiff applied for the vacancy and made the list of the six best-qualified candidates which was forwarded for final decision to Washington. Plaintiff, then 54, was the oldest candidate for the position. He was not chosen. Sam Basile, then a 42–year old Supervisory Agricultural Commodities Grader in the Indianapolis Field Office, was chosen for the position. Basile had worked for the FGIS since 1977, and had been a Grader since 1979.

## II. Legal Standard

The District of Columbia Circuit has explained that in an action under the ADEA:

> the plaintiff's ultimate burden is to prove that age was "a determining factor" in the challenged employment decision … The plaintiff must prove that "age made a difference in the employer's decision" … in the sense that, "but for" the discriminatory motive, the employee would have been hired, promoted, or retained.

*Krodel v. Young*, 748 F.2d 701, 706 (D.C. Cir.1984), *cert. denied* —— U.S. ——, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985) (citations omitted). To determine whether the plaintiff has met this ultimate burden, the D.C. Circuit has adopted the tripartite evidentiary scheme of Title VII cases articulated by the Supreme Court in *McDonnell-Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Krodel*, 748 F.2d at 705, *Coburn v. Pan American World Airways, Inc.*, 711 F.2d 339, 342–43 (D.C. Cir.1983), *cert. denied*, 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 683, *Cuddy v. Carmen*, 694 F.2d 853, 856–57 (D.C.Cir.1982).

The plaintiff must first establish a prima facie case of discrimination through proof of "sufficient facts to create a reasonable inference that … age was a factor in the employment decision at issue." *Krodel*, 748 F.2d at 705. Once the prima facie case has been made, the employer bears a "minimal burden" of putting forward a legitimate, non-discriminatory basis for its decision. Should the employer meet this burden, the plaintiff may then attempt to show that the employer's rationale is merely pretextual, which he can do "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's preferred explanation is unworthy of credence." *Texas Dep't of Community*

*Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

## III. Applying the Legal Standard

### A. Prima Facie Case

█ A plaintiff can establish a prima facie case of discrimination by demonstrating "facts sufficient to create a reasonable inference that age discrimination was 'a determining factor' in the employment decision." *Cuddy,* 694 F.2d at 856–57. Such an inference is created if the plaintiff can show that he (1) belongs to the statutorily protected age group, (2) was qualified for the position, (3) was not promoted despite being qualified, and (4) was disadvantaged in favor of a younger person. *Id.* Plaintiff has carried his burden on each of these prongs and thus has made out a prima facie case.

### 1. *Member of Protected Class*

In this case, the protected class is defined as those "individuals who are at least 40 years of age," 29 U.S.C. § 631(b). The plaintiff, who was 54 at the time in question, clearly belongs to the protected class.

### 2. *Qualified for Position*

There is an abundance of evidence in the record to support the proposition that he was qualified for the position in question. *First,* plaintiff had an excellent work record and had received a number of citations for his outstanding work, as well as a number of monetary awards. Joint Ex. 1, Administrative Record ("Record"), at 17–20. For instance, just six months prior to the selection at issue in this case, plaintiff was awarded a "Certificate of Merit—Cash Award," by John Marshall, Director of the Field Management Division, "for outstanding leadership, initiative, and professionalism as an instructor, and for the development of training materials for processed commodity grain workshops." *Id.* at 19.[1]

*Second,* at trial in response to a question from the Court, plaintiff's supervisor stated that the plaintiff was a "top-notch employee" and was clearly capable of serving as a FOM. Marshall Tr. at 50–51. *Third,* the plaintiff was on the list of the six best qualified candidates sent to Washington. *Fourth,* at the time of Mr. Nunn's retirement from the Peoria FOM position, he "strongly" recommended plaintiff be promoted to fill the position. Mr. Nunn wrote:

> [Plaintiff's] analytical skills on all grains is far above the average and is held in the highest esteem by the Board of Appeals and Review. His reputation and integrity is recognized by the official inspection personnel, as well as members of the grain trade.
>
> He maintains a good disposition and is fair in dealing with employees as well as other people. His concern for the developing of employees' potential has helped immensely and is critical in the training of our younger employees.

Record at 1.

Indeed, the evidence of plaintiff's qualifications is so overwhelming that—while the defendant has attempted to show that there was a candidate who was better qualified than the plaintiff, *see* Section III(B), *infra*—defendant does not argue with the contention that the plaintiff was well qualified for the position.

### 3. *Not Chosen*

Thus, despite his qualifications the plaintiff was not promoted.

### 4. *Disadvantaged in Favor of a Younger Person*

The person who was promoted was significantly younger than the plaintiff, 42-years old as opposed to 54. This age difference satisfies the fourth prong of the prima facie case, notwithstanding the fact that the person who was promoted was also a member of the (over 40–year old) protected class.[2]

---

1. The record reflects the fact that the plaintiff had conducted workshops, seminars, or training courses on nine different occasions over a period of years all over the United States. Record at 10.

2. Defendant has argued that because the person who was selected instead of the plaintiff was himself a member of the protected class, the plaintiff could not establish a prima facie case of discrimination. Def. Proposed Findings of

Having fulfilled the four prongs of the test, plaintiff has made out a *prima facie* case; he has demonstrated "facts sufficient to create a reasonable inference that age discrimination was 'a determining factor' in the employment decision." *Cuddy*, 694 F.2d at 856–57.

### B. Defendant's Proferred Non-Discriminatory Case

Defendant has put forward *one* reason for not promoting the plaintiff, namely that there existed a minor glitch in the way that the plaintiff supervised testing of some of the Department's equipment. Anthony Tr. at 6–7. Specifically, the DOA maintains equipment used to test agricultural products. The Department's equipment must itself be check-tested to assure the quality of the agency's tests. The complaint about the plaintiff was that he check-tested a moisture machine by checking three samples taken from the machine instead of six. It was concluded from this single minor incident that "[plaintiff's] leadership ... had not been of the quality that's necessary to promote him into the manager's position." *Id.* at 6.

Beyond that minor incident, the only ground the defendant really offers for not promoting the plaintiff is that in the opinion of the selecting officer, the selectee was better qualified than the plaintiff.

I am not certain that the defendant has met even the minimal burden required to rebut the plaintiff's prima facie case. But regardless of whether it has or not, the plaintiff has made a convincing case that the reasons defendant offers are a pretext to hide the discrimination at issue.

### C. Plaintiff's Showing that Defendant's Reasons are Pretextual

Plaintiff has shown that both of the reasons offered by the defendant are pretextual. *First*, the defendant seeks to justify the selection of a younger person almost entirely on the basis of a single negative criticism of the plaintiff. *See* Section III(B), *supra.* I heard this testimony and was unimpressed. The incident in question was an extremely minor matter that had taken place some years back and was not even mentioned to the plaintiff during his interview for the FOM position. It is difficult to imagine a more pretextual reason for non-promotion. Indeed, at trial it was conceded that this incident was merely "a minor consideration when ... reviewing the total performance." *Id.* at 17.

*Second*, defendant attempts to justify its selection by contending that the selectee was more qualified than the plaintiff. Apparently, during the early 1980s, Basile, the selectee, had been somewhat innovative in implementing an automation program in his prior assignment. While this is certainly admirable, defendant could not establish that it made the selectee a better candidate for the FOM position. On the contrary, a review of the critical points considered by the selecting officials reveals that the plaintiff is the much stronger candidate:

Fact and Conclusions of Law ("Def.Br.") at 4. It is true that this tenet might make some sense in the area of race or sex discrimination. And it is true that in the *Krodel* case, the D.C. Circuit did articulate the fourth prong of the prima facie case as meaning a person *not* a member of the protected class was chosen instead of the plaintiff. *Krodel*, 748 F.2d at 706.

However, because the selectee in the *Krodel* case was not a member of the protected class, the Court was not really faced with the situation at issue in this case. Moreover, subsequent decisions in the area of age discrimination have interpreted the law to be that a prima facie showing can be made if *any* person significantly younger than the plaintiff is chosen. *See, e.g., Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 237, n. 5, (4th Cir.1982); *McCorstin v. United States Steel Corp.*, 621 F.2d 749, 753–54 (5th Cir.1980); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1012–13 (1st Cir.1979). *See also Endres v. Helms*, 617 F.Supp. 1260, 1266–1267 (D.D.C. 1985) (Gasch, J.) (58-year old could make out prima facie case even when selectee was 56-years old); *Polstorff v. Fletcher*, 452 F.Supp. 17 (N.D.Ala.1978) (62-year old could make out prima facie case even when selectee was 42-year old). Finally, the Equal Employment Opportunity Commission has written that "if two people apply for the same position, and one is 42 and the other 52, the employer may not lawfully turn down either one on the basis of age ..." 29 C.F.R. § 1625.2(a).

Thus, it is now hornbook law that the ADEA covers "discrimination based on age between younger and older persons within the group protected by the Act." 3 Larson, *Employment Discrimination* § 98.53 at 21–46 (1986 rev.).

(1) Plaintiff had almost thirty years of experience with the FGIS; the selectee had fewer than ten.

(2) Plaintiff had served at the GS–11 level since 1977; the selectee since 1979.

(3) Plaintiff had nearly twenty years experience in the office in which the FOM position was located, including ten years as assistant to the position being filled, a position he filled with distinction, *see* Section III(A)(2), *supra.* The selectee had no experience in the Peoria office.

This last factor—that the plaintiff had been working in the Peoria Office for some twenty years, during which time he had been acting FOM on two occasions, one when the FOM was incapacitated and then again when the FOM resigned—clearly placed the plaintiff in a far superior position. Moreover, throughout his entire working career at the Peoria Office, both as Assistant Field Office Manager and Acting Field Office Manager, the plaintiff had a sterling record. *See* Section III(A)(2), *supra.* He was highly regarded, both in terms of his abilities and his high ethical standards. *Id.* Additionally, he got along extremely well with those he regulated. *Id.* From the record before me, it is clear that the plaintiff's prior experience on the job was given little if any weight, while a minor alleged deficiency was given a preposterously inordinate amount of consideration.

Thus, upon review, the reasons put forward by the defendant for hiring Basile, not the plaintiff, emerge as nothing more than pretextual. I am convinced that the real reason plaintiff did not get the job was because of his age. This determination is buttressed by evidence produced by the plaintiff concerning several other incidents of discrimination by the defendant.

*First,* at a conference of Field Office Managers that took place in Kansas City, Missouri in February, 1986, John Marshall—who was the official in charge of this division of DOA—made a number of remarks about difficulties he was having with the older FOMs. For example, one witness testified that Marshall said that the older FOMs were "unwilling or unable to change" and that they had their "heads in the sand." McDonald Tr. at ——. Another witness testified that Marshall said he had "a couple of older FOMs he had to straighten out." Duncan Tr. at ——.

Apparently, Marshall was expressing the old canard that it is difficult to get older people who are set in their ways to accept new ways of doing things. While this may be true in some instances, it is clearly too broad an allegation to apply to a group of hard-working dedicated persons on an across the board basis. Such a generalization smacks of just the type of discrimination the law is designed to protect against. The statements made by Marshall evidence a bias against older persons in general and older FOMs in particular. The plaintiff, who attended this conference as the Acting FOM of the Peoria Office, was one of the targets of Marshall's injudicious remarks.

*Second,* I give weight to an incident which occurred in the course of selecting an FOM for the Omaha office in 1985. It is quite clear, and admitted by the defendant, that the person most qualified for that position was the FOM of the Minneapolis office, Donald Groves, fifty years of age. Groves also happened to be from Nebraska and apparently desired the lateral transfer to be reunited with his family there. Instead, however, the person who was awarded the job was a lower graded, less qualified, but younger [thirty-six year old] individual. Marshall, the same ultimate selecting authority as in this case, is quoted as having said that he did not "want to transfer [Groves] to Omaha and just have [him] retire." Groves Tr. at ——. This statement is probative of Marshall's state of mind vis a vis his older employees and is further evidence of his age bias.[3]

---

**3.** Marshall is the person at the center of the discriminatory statements at both the Kansas City meeting and the Omaha incident. Defendant has attempted to discredit these incidents by showing that Marshall's deputy, G. Tharon Anthony, was the appointing official, not Marshall. I reject this explanation as completely not credible. The testimony offered at trial showed that Marshall had a hands-on managerial style; he oversaw the FOM appointment process and was

*Third,* the statistical evidence in the record is revealing. *See* Pl. Ex. 2, Def. Ex. 13. The exhibit lists the persons selected for vacant FOM positions since 1981. The exhibit also lists all the persons who were considered qualified for those positions. In all but one of seven instances documented, an individual in his thirties was selected despite the fact that individuals in their early fifties were deemed to be qualified for the position. In the remaining case—this one—an individual in his early forties was selected out of a field which encompassed a number of qualified individuals in their fifties, including the plaintiff.

I am aware that statistical evidence such as this standing alone is not dispositive, *see Furnco Construction Corp. v. Waters,* 438 U.S. 567, 580, 98 S.Ct. 2943, 2951, 57 L.Ed.2d 957 (1978); however, it has "at least some relevance to [the] ultimate judgment concerning discriminatory intent." *Krodel,* 748 F.2d at 710. Taken together with the other evidence—and the lack of any real non-discriminatory explanation by the defendant—the statistical evidence further supports the irrefutable conclusion that the plaintiff was denied the FOM promotion because of his age.

Finally, in addition to these incidents and statistics, there is an admitted lack of response to age discrimination issues within the DOA. Specifically, in response to a question put forward by the Court, the defendant admitted that it had absolutely no programs or policies in place at the Department of Agriculture to ensure that persons will not be discriminated against on the basis of their age. Marshall Tr. at 44.[4]

Thus the plaintiff has produced a quantum of evidence more than sufficient to successfully rebut the reasons for his non-selection proferred by the defendant and has shown these reasons to be pretextual. Accordingly, I find that the plaintiff has met his burden of proving by a preponderance of the evidence that he was discriminated against because of his age. I am convinced that if the plaintiff had been the incumbent's age, he would have been promoted to the position in question.

## IV. Remedy

■ I now turn to consideration of an appropriate remedy. Since it is unclear when another suitable FOM position will be available, I believe the most appropriate manner by which to make the plaintiff whole would be to award him management of the Peoria office and back pay from the date the original award was made to the incumbent.

I am aware that the incumbent is an innocent victim of the defendant's wrongful acts and that bumping him from his position to remedy the harm done to the plaintiff is not to be lightly ordered. However, three Courts of Appeals, as well as several District Judges in this Court, have found "bumping" to be an appropriate remedy when necessary to make a Title VII plaintiff whole. *See Brewer v. Muscle Shoals Board of Ed.,* 790 F.2d 1515, 1522–24 (11th Cir.1986); *Spagnuolo v. Whirlpool Corp.,* 717 F.2d 114, 122 (4th Cir. 1983); *Lee v. Macon County Bd. of Education,* 453 F.2d 1104, 1112 (5th Cir.1971). *See also Griffiths v. Hampton, et al.,* 12 Emp.Prac.Dec. (CCH) ¶ 11,038 (D.D.C.1976) (Bryant, J.) [Available on WESTLAW–DCT database]; *Wells v. Perry,* 9 Emp.Prac. Dec. (CCH) ¶ 10,226 (D.D.C.1975) (Gasch,

---

consulted by Anthony whenever appointment decisions were made. Joint Pretrial Statement, Stipulated Fact 4. Indeed, it was Marshall who told the Minneapolis FOM Groves why he was not selected for the Omaha post, *see* Marshall Tr. at 32–34. Moreover, Anthony made it quite clear that Marshall set the policies of the office and that he simply executed them. Finally, Marshall himself testified he had "the power to turn [a promotion] down if [he] didn't agree." Marshall Tr. at 37.

4. The pertinent portion of the testimony reads:
   THE COURT: When you review these proposed promotions and selections, you do not have any system that you have put into effect to assure yourself that someone is not going to be discriminated against because of that person's sex, age or national origin; is that what you are telling me?
   THE WITNESS (Marshall): There is not a program that I'm aware of.
   Marshall Tr. at 44.

J.) [Available on WESTLAW–DCT database].

I find that installing the plaintiff as the FOM in Peoria is the only remedy which will make him whole. Moreover, the egregious facts of this case fully warrant such a result. Finally, bumping is not terribly Draconian to the incumbent because the defendant has the ability—which I hope it will use—to make appropriate provisions for this "innocent" bystander.

## V. Conclusion

Age discrimination is invidious. When it is present, it has a very devastating effect on both the discriminatee and the organization for which he works. As to the discriminatee: there is nothing that can destroy a person's self-esteem and dignity more than the decision to freeze him in his employment position for his remaining working years. He is simply thrown on a human trash heap with little chance or opportunity to attain whatever modest goals he may have. The employer also suffers, though, since it must now contend with a dispirited and unmotivated member of the work force and since it has set a terrible example for its other employees.

What makes age discrimination even more invidious is that it is extremely difficult to detect. Because of the law against age discrimination, the employer is prevented from candidly telling the discriminatee that he or she has been passed over because of age and that there is little hope for advancement. Instead, the employer generally offers some (easy to find) reason why a younger employee might be considered better qualified than an older one. Nonetheless, in this case as in others, people are able to see through the pretext—to read the writing on the wall—and because of the governing statutes, they are able to do something about it.

The Age Discrimination in Employment Act makes it unlawful to discriminate on the basis of an individual's age. The case law—discussed at Sections II–III(A), *supra* —sets forth the requirements that must be met in order for a plaintiff to prevail in an age discrimination case. I conclude that the plaintiff has sustained his burden and that the defendant is guilty of age discrimination. I further conclude that the only adequate remedy to make the plaintiff whole is to award him the position of Field Office Manager in Peoria, Illinois, and to give him the enhanced monetary emoluments of the position from the date the new FOM was selected for the Peoria position.

This Memorandum Opinion is adopted as my findings of fact and conclusions of law, Fed.R.Civ.P. 52(a), and is accompanied by an appropriate Order, which shall be carried out within thirty (30) days.

### ORDER

For the reasons stated in the Memorandum Opinion dated May 12, 1987, it is this 12 day of May, 1987, hereby

ORDERED that judgment be entered for the plaintiff and against the defendant and further

ORDERED that the defendant shall appoint plaintiff Richard Miller to be the Field Office Manager of the Department of Agriculture's Peoria, Illinois Field Office within thirty (30) days, and further

ORDERED that the defendant shall pay to plaintiff back pay from the date of the appointment of the present incumbent to the Peoria Field Office Manager's position.