Jimmie **DOBBS**, Plaintiff,

v.

Dr. James **ROCHE**, Secretary, United States Department of the Air Force, Defendant.

No. CIV.A.02–0554 RMU.

United States District Court, District of Columbia.

Aug. 2, 2004.

Nathaniel David Johnson, Waldorf, MD, for Plaintiff.

Darrell C. Valdez, U.S. Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION

### Granting The Defendant's Motion for Summary Judgment

URBINA, District Judge.

## I. INTRODUCTION

This case comes before the court on the defendant's motion for summary judgment. The plaintiff alleges that his supervisor unlawfully discriminated against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* The court grants the defendant's motion for summary judgment because the plaintiff did not establish a prima facie case of race discrimination under Title VII nor age discrimination under the ADEA.

## II. BACKGROUND

### A. Factual History

Jimmie Dobbs, an African–American male in his early-sixties, worked from January 1991 through October 1997, for the Department of the Air Force as Recreation Support Manager, a GS–301–12 level position, at Bolling Air Force Base in Washington, D.C. Dobbs Aff. ¶ 1. On October 14, 1997, the plaintiff signed a Foreign Overseas Employment Agreement assigning him to Osan Air Force Base in Korea and granting him return rights to the position of Recreation Support Manager, a GS–301–12 level position, upon his return from Korea. Def.'s Statement of Undisputed Material Facts ("Def.'s Statement") ¶ 2; Def.'s Mot. Summ. J. ("Def.'s Mot.") Ex. GX1 at 1–2; Dobbs Aff. ¶¶ 9–10; Pl.'s Opp'n Ex. 3. Specifically, the Return Rights Agreement reads in relevant part, "I understand that I have been granted return rights to my former position of Recreation Support Manager, GS–301–12 located at Bolling AFB." Pl.'s Opp'n Ex. 3 at 1; Def.'s Mot. Ex. GX1 at 1–2. On June 10, 1999, the plaintiff notified Mr. Edmond Miles, a supervisor at Bolling Air Force Base, via e-mail, of his intention to exercise his return rights. Pl.'s Opp'n at 2; Pl.'s Opp'n Ex. 4; Johnson Aff. ¶¶ 3–5; *see generally* Wright Aff. This e-mail notification prompted discussion among personnel at Bolling Air Force Base, including Mr. Miles, to determine the plaintiff's status upon his return. *Id.* The Air Force subsequently determined that the plaintiff had return rights to the same position he left, that of Recreation Support Manager, a GS–301–12 level position. Def.'s Mot. at 2; Johnson Aff. ¶ 10; Dobbs Aff. ¶ 14. Accordingly, on September 10, 1999, the plaintiff returned to Bolling Air Force Base in that position. *Id.*; Def.'s State-

ment ¶ 2. Because another employee occupied this position at the time of the plaintiff's return, the two split the duties and responsibilities associated with the position, each earning the GS–301–12 salary in full, accomplishing the defendant's goal of ensuring uninterrupted gainful employment for both employees. Def.'s Statement ¶ 4; Miles Aff. ¶ 23.

When the plaintiff returned to Bolling Air Force Base, an Air Force-wide reorganization was in progress. Def.'s Mot. at 2; Looney Aff. ¶ 5; Wiltshire Aff. ¶ 11. As part of the reorganization, three GS–301–12 positions were being eliminated, including that of the plaintiff, Ms. Leslie Lipps, and Mr. Warren Teets, and replaced with three newly-created positions. *Id.;* Miles Aff. ¶ 14. The Civilian Personnel Office ("CPO") evaluated the new positions to determine whether they were GS–301–12 or upgraded GS–301–13 positions and whether or not the new positions were *clear successors* of the eliminated positions. Miles Aff. ¶¶ 15–16; Houston Aff. ¶¶ 5–6. When the CPO determines a position to be a clear successor, that is, the position requires the same or similar knowledge, skills, and abilities ("KSA's") as the previous position, the CPO considers the incumbent for non-competitive promotion to the new position. Miles Aff. ¶¶ 15–17. While all three positions were determined to be GS–301–13 positions, only one of the newly-established positions, that replacing Mr. Teets' eliminated position, was determined to be a clear successor. *Id.* Accordingly, Mr. Teets was considered and subsequently non-competitively promoted to the new GS–301–13 position. *Id.* The CPO, however, determined that the two other positions,[1] those replacing the eliminated positions of the plaintiff and Ms. Lipps, were not clear successors to the eliminated positions, that is, the positions required different KSA's and therefore required the employees to compete for these positions. *Id.;* Def.'s Statement ¶¶ 6–7; Houston Aff. ¶ 6. The plaintiff remained in the position of Recreation Support Manager for roughly three months, sharing his duties and responsibilities as aforementioned, before the plaintiff was competitively selected for promotion to the new GS–301–13 position. Def.'s Statement ¶ 8; Pl.'s Resps. to Def.'s Admiss. ("Pl.'s Resps.") ¶ 4; Miles Aff. ¶ 13; Def.'s Mot. at 11.

## B. Procedural History

On January 15, 2002, the Equal Employment Opportunity Commission ("EEOC") issued the plaintiff a final agency decision right to sue letter entitling the plaintiff to commence this civil action within seventy days of his receipt of the letter. Compl. at 2. On March 21, 2002, the plaintiff initiated this suit against the defendant, alleging that the defendant discriminated against him on account of his race and age, violating both Title VII and the ADEA, by first, forcing him to compete for a promotion that he was entitled to and second, diminishing the plaintiff's duties and responsibilities for three months before his promotion. *Id.* at 3. The defendant filed its answer on July 29, 2002, advancing, *inter alia,* the affirmative defense of failure to exhaust administrative remedies with regard to the plaintiff's claim of discrimination based on diminished duties and responsibilities. Answer at 1. On February 4, 2003, the defendant filed its motion for summary judgment. The court now addresses that motion.

---

1. The two newly-created positions are Community Support Flight Manager and Family Member Program Officer. Def.'s Mot. at 12; Miles Aff. ¶ 17.

## III. ANALYSIS

### A. Exhaustion of Administrative Remedies

#### 1. Legal Standard for Exhaustion of Administrative Remedies Under Title VII and the ADEA

█ In actions brought under Title VII and the ADEA, a court has authority over only those claims that are (1) contained in the plaintiff's administrative complaint or claims "like or reasonably related to" those claims in the administrative complaint and (2) claims for which the plaintiff exhausted administrative remedies. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C.Cir.1995); *Caldwell v. ServiceMaster Corp.*, 966 F.Supp. 33, 49 (D.D.C.1997). It is the defendant's burden to prove by a preponderance of the evidence that the plaintiff failed to exhaust administrative remedies. *Brown v. Marsh*, 777 F.2d 8, 13 (D.C.Cir.1985) (stating that "because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it"). Meager, conclusory allegations that the plaintiff failed to exhaust his administrative remedies will not satisfy the defendant's burden. *Id.* at 12. (noting that a mere assertion of failure to exhaust administrative remedies without more is "clearly inadequate under prevailing regulations to establish a failure to exhaust administrative remedies").

█ Dismissal results when a plaintiff fails to exhaust administrative remedies. *Rann v. Chao*, 346 F.3d 192, 194–95 (D.C.Cir.2003) (affirming the trial court's dismissal of the plaintiff's ADEA claim for failure to exhaust administrative remedies); *Gillet v. King*, 931 F.Supp. 9, 12–13 (D.D.C.1996) (dismissing the plaintiff's Title VII claim because he failed to exhaust his administrative remedies).

#### 2. The Defendant Failed to Meet his Burden That the Plaintiff Failed to Exhaust his Administrative Remedies

█ In this case, the defendant properly raised the affirmative defense of failure to exhaust administrative remedies in his answer. Answer at 1. He has not, however, met his burden of proving by a preponderance of the evidence that the plaintiff failed to exhaust his administrative remedies. As in *Marsh*, the defendant in this case only put forth meager, conclusory allegations that the plaintiff failed to exhaust his administrative remedies. *See generally* Answer; Def.'s Mot. The defendant's answer simply states that the "plaintiff failed to exhaust administrative remedies." Answer at 1. The defendant's motion for summary judgment merely repeats the same limited assertion that the "plaintiff failed to raise his 'duties and responsibilities' administratively." Def.'s Mot. at 15. The defendant fails to provide adequate evidence, relevant case law, or legal analysis to support his conclusory representation that the plaintiff failed to exhaust his administrative remedies. *Id.* at 15–16. The defendant fails to meet his burden and leaves the court with no basis for holding that the plaintiff did not exhaust his administrative remedies. Accordingly, the court moves on to the merits of the defendant's motion for summary judgment.

### B. The Court Grants the Defendant's Motion for Summary Judgment

#### 1. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any materi-

al fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene,* 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary judgment motions in such cases with special caution. *See Aka v. Wash. Hosp. Ctr.,* 116 F.3d 876, 879–80 (D.C.Cir.1997), *overturned on other grounds,* 156 F.3d 1284 (D.C.Cir.1998) (en banc); *see also Johnson v. Digital Equip. Corp.,* 836 F.Supp. 14, 18 (D.D.C.1993).

## 2. Legal Standard for Race Discrimination Under Title VII and Age Discrimination Under the ADEA

A plaintiff pursuing claims under Title VII and the ADEA may demonstrate discrimination through either direct or circumstantial evidence. *Dunaway v. Int'l Bd. of Teamsters,* 310 F.3d 758, 763 (D.C.Cir.2002). When the plaintiff relies on circumstantial evidence, the court, in resolving the defendant's motion, must therefore "apply the framework developed in the context of Title VII litigation[. T]hat is, where direct evidence of discriminatory intent is not available, a party may establish unlawful [race and] age discrimination by relying on the familiar burden-shifting scheme" known as the *McDonnell Douglas* framework. *Hall v. Giant Food, Inc.,* 175 F.3d 1074, 1077 (D.C.Cir.1999) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Courts routinely apply the *McDonnell Douglas* framework to ADEA claims. *Id.* (applying the *McDonnell Douglas* framework to ADEA claims); *accord Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 140–42, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Paquin v. Fed. Nat'l Mortgage Ass'n,* 119 F.3d 23, 26 (D.C.Cir.1997).

The Supreme Court explained the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection" .... Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by the preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination .... The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (internal citations omitted) (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817).

 Thus, the plaintiff must first establish a prima facie case of prohibited discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Aka,* 156 F.3d at 1288. To establish a prima facie case of race discrimination under Title VII, the plaintiff must show that "(1) [he] is a member of a protected class; (2)[he] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brown v. Brody,* 199 F.3d 446, 452 (D.C.Cir.1999); *Stewart v. Ashcroft,* 352 F.3d 422, 428 (D.C.Cir.2003); *Carroll v. England,* 321 F.Supp.2d 58, 68 (D.D.C.2004). To establish a prima facie case of age discrimination under the ADEA, the plaintiff must demonstrate "facts sufficient to create a reasonable inference that age discrimination was a determining factor in the em-

ployment decision." *Cuddy v. Carmen,* 694 F.2d 853, 856–57 (D.C.Cir.1982); *Miller v. Lyng,* 660 F.Supp. 1375, 1377 (D.D.C.1987). Such an inference is created if the plaintiff can show (1) he belongs to the statutorily protected age group; (2) he was qualified for his position and was performing his job well enough to meet his employer's legitimate expectations; (3) he suffered an adverse employment action despite his qualifications and performance; and (4) he was disadvantaged in favor of similarly situated younger employees. *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097; *Hall,* 175 F.3d at 1077; *Paquin,* 119 F.3d at 26 (citing *Coburn v. Pan Am. World Airways, Inc.,* 711 F.2d 339, 342 (D.C.Cir. 1983)). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089.

If the plaintiff establishes a prima facie case, a presumption then arises that the employer unlawfully discriminated against the employee. *Id.* at 254, 101 S.Ct. 1089. To rebut this presumption, the employer must articulate a legitimate, nondiscriminatory reason for its action. *Id.* The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Id.* Rather, "[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

 If the employer successfully presents a legitimate, nondiscriminatory reason for its actions, "the McDonnell Douglas framework—with its presumptions and burdens—disappears, and the sole remaining issue is discrimination *vel non.*" *Lathram,* 336 F.3d at 1088 (internal citations

omitted). At this point, to survive summary judgment, the plaintiff "must show that a reasonable jury could conclude from all the evidence that the adverse employment decision was made for a discriminatory reason." *Id.* (citing *Aka*, 156 F.3d at 1290). The court must consider whether the jury could infer discrimination from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of discrimination that may be available to the plaintiff. *Waterhouse v. District of Columbia*, 298 F.3d 989, 992–93 (D.C.Cir.2002) (quoting *Aka*, 156 F.3d at 1289). The plaintiff need not present evidence in each of these categories in order to avoid summary judgment. *Aka*, 156 F.3d at 1289. Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the total circumstances of the case. *Id.* at 1291.

### 3. The Court Denies the Plaintiff's Claim of Discrimination Based on Diminished Duties and Responsibilities

#### a. The Plaintiff Failed to Establish a Prima Facie Case of Race Discrimination Under Title VII

■ Under Title VII, to establish a prima facie case of race discrimination, the plaintiff must show that "(1) [he] is a member of a protected class; (2)[he] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brody*, 199 F.3d at 452; *Stewart*, 352 F.3d at 428; *Carroll*, at 68.

■ Because the parties do not dispute that the plaintiff is an African–American, thereby placing him within Title VII's protected class, the court considers the first prong of his prima facie case established. *Id.;* 42 U.S.C. § 2000–e(2)(b).

Yet right out of the starting gate, the plaintiff fails to prove that he suffered an adverse employment action. While this circuit has not exhaustively defined what constitutes an adverse employment action under Title VII, "courts have consistently focused on ultimate employment decisions such as hiring, granting leave, promoting, and compensating ... [and not] interlocutory or intermediate decisions having no immediate effect upon employment decisions." *Walker v. Wash, Metro. Area Transit Auth.*, 102 F.Supp.2d 24, 28 (D.D.C.2000) (alteration in original) (citing *Taylor v. Fed. Deposit Ins. Corp.*, 132 F.3d 753, 764 (D.C.Cir.1997)). An employment decision does not rise to the level of an actionable adverse action, however, unless there is a "tangible change in the duties or working conditions constituting a material employment disadvantage." *Kilpatrick v. Riley*, 98 F.Supp.2d 9, 10 (D.D.C.2000). "Changes in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes." *Heasley v. D.C. Gen. Hosp.*, 180 F.Supp.2d 158, 169 (D.D.C.2002) (citing *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1557 (D.C.Cir.1997)).

The record indicates that the plaintiff has not suffered an adverse employment action. The plaintiff neither received a decrease in salary nor a change in work hours. Def.'s Statement ¶ 4; Miles Aff. ¶ 23; Dobbs Aff. ¶ 20. The plaintiff concedes that his placement in the position of Recreation Support Manager, GS–301–12, upon his return from Korea, complied with his Return Rights Agreement. Def.'s Statement ¶ 3; Pl.'s Resps. ¶ 3. Because the plaintiff recognizes that he was properly placed in the GS–301–12 position, the same position he previously held, he cannot now claim that he has suffered economic loss by not being placed in the GS–

301–13 position upon his return from Korea. The plaintiff's supervisor further explains in his affidavit that he divided the duties and responsibilities among the plaintiff and the man occupying the Recreation Support Manager position at the time of the plaintiff's return to "keep them both gainfully employed during this transition." Miles Aff. ¶ 23. Moreover, the brief change in the plaintiff's duties and responsibilities during the three-month transition period did not prevent the plaintiff from being competitively promoted to the position of Community Support Flight Manager, a GS–301–13 level position, Def.'s Statement ¶ 8; Pl.'s Resps. ¶ 4, which further supports the fact that the plaintiff has not suffered a material employment disadvantage. The court concludes that the plaintiff has failed to provide the requisite showing of an adverse employment action and therefore fails to establish the second prong of his prima facie case. *Brody,* 199 F.3d at 452. Accordingly, the court need not delve into analysis of the third and final prong of the plaintiff's prima facie case and grants the defendant's motion for summary judgment on the plaintiff's claim of discrimination under Title VII based on diminished duties and responsibilities.

### b. The Plaintiff Failed to Establish a Prima Facie Case of Age Discrimination Under the ADEA

To establish a prima facie case of age discrimination under the ADEA, the plaintiff "must demonstrate facts sufficient to create a reasonable inference that age discrimination was a determining factor in the employment decision." *Cuddy,* 694 F.2d at 856–57; *Miller,* 660 F.Supp. at 1377. The plaintiff creates such an inference by showing that (1) he belongs to the statutorily protected age group; (2) he was qualified for his position and was performing his job well enough to meet his employer's legitimate expectations; (3) he suffered an adverse employment action despite his qualifications and performance; and (4) he was disadvantaged in favor of similarly situated younger employees. *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097; *Hall,* 175 F.3d at 1077; *Paquin,* 119 F.3d at 26.

■■■ Because the parties do not dispute that the plaintiff was in his late fifties at the time of the alleged incidents, thereby placing him well within the ADEA's protected class, the court considers the first prong of his prima facie case established. *Id.;* 29 U.S.C. § 631(a). This brings the court to the second prong of the plaintiff's prima facie case. While the plaintiff claims that he was indeed qualified for the GS–301–13 Community Support Flight Manager position because he was performing the duties of that position for one year prior to leaving for Korea, Pl.'s Opp'n. at 21, the defendant denies this proposition in its entirety. *See generally* Def.'s Mot.; Def.'s Reply. What's more, the plaintiff introduced an e-mail written by the plaintiff's supervisor, which hints that the plaintiff was not performing his job well enough to meet his employer's legitimate expectations. Pl.'s Opp'n Ex. 4. Specifically, the e-mail states in relevant part, "[h]e's a marginal performer who was basically run off by my predecessor." *Id.* The plaintiff's supervisor explains in his affidavit that the statement was a "performance-related comment that had nothing to do with [the plaintiff's] race or age." Miles Aff. ¶ 21. Even assuming *arguendo* that the plaintiff could sufficiently establish the second prong of his prima facie case, the court need not tarry over this qualification element because the plaintiff does not offer evidence that he suffered an adverse employment action and therefore cannot establish the third prong of his prima facie case. To the same extent that the plaintiff

failed to provide the requisite showing of an adverse employment action under Title VII, as he neither received a decrease in salary nor a change in work hours, he too fails here. *See supra* discussion Part III. B.3.a. In the end, the court cannot get water out of a stone, and the plaintiff falls short of establishing a prima facie case of discrimination by not creating the necessary "inference that age ... was a determining factor in the [defendant's] employment decision." *Cuddy,* 694 F.2d at 856–57. Accordingly, the court grants the defendant's motion for summary judgment on the plaintiff's claim of discrimination under the ADEA based on diminished duties and responsibilities.

#### 4. The Plaintiff's Claim of Discrimination Based on Being Forced to Compete

#### a. The Plaintiff Failed to Establish a Prima Facie Case of Race Discrimination Under Title VII

As noted, to establish a prima facie case of race discrimination under Title VII, the plaintiff must prove, *inter alia,* that the unfavorable action gives rise to an inference of discrimination. *Brody,* 199 F.3d at 452; *see supra* discussion Part III.B.3.a. To create such an inference, the plaintiff must identify a similarly situated employee, outside his protected class, who was treated more favorably than the plaintiff. *Holbrook v. Reno,* 196 F.3d 255, 261 (D.C.Cir.1999). To be deemed similarly situated, the plaintiff must "demonstrate that all of the relevant aspects of [his] employment situation are nearly identical to those of the [alleged comparator]." *Id.* (internal quotations omitted). Said another way, the individual with whom the plaintiff seeks to compare his treatment "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without

differentiating or mitigating circumstances that would distinguish his conduct or the employer's treatment of [him] for it." *Id.; Phillips v. Holladay Prop. Services,* 937 F.Supp. 32, 37 (D.D.C.1996), *aff'd mem.* 1997 WL 411695, 1997 U.S.App. LEXIS 19033 (D.C.Cir. June 19, 1999) (citing *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir.1992)). This, the plaintiff cannot do.

The defendant persuasively argues that the only similarly situated employee, Ms. Leslie Lipps, was treated identically to the plaintiff. Def.'s Mot. at 12–13; Def.'s Reply at 6–8. Both the plaintiff and Ms. Lipps had parallel experiences. Specifically, they occupied GS–301–12 positions prior to the Air Force's reorganization, worked under the same supervisor, competed for promotions when their positions were terminated and reclassified as *not* clear successor GS–301–13 positions, and were promoted after merit-based competition to the newly-established GS–301–13 positions. Def.'s Statement ¶ 8; Def.'s Mot. at 12; Miles Aff. ¶¶ 15–19; Pl.'s Opp'n at 10. The plaintiff, however, argues that another employee, Mr. Teets, was a similarly situated employee, not in a protected class, who was treated more favorably than the plaintiff. Pl.'s Opp'n at 9–11. The court finds no such similarity between the plaintiff and the alleged comparator. Notably, the position that replaced Mr. Teets' GS–301–12 position was determined to be a clear successor, whereby the incumbent Mr. Teets was non-competitively promoted. Def.'s Statement ¶¶ 6–7; Def.'s Mot. at 13; Miles Aff. ¶ 19. By contrast, the position replacing that of the plaintiff was not determined to be clear successor, thereby requiring the plaintiff to compete for promotion. *Id.* The plaintiff's and Mr. Teets' positions are therefore fundamentally dissimilar; the very issue the plaintiff contests, being forced to compete, is at the

heart of the individuals differences. Accordingly, the plaintiff cannot establish that there was a similarly situated employee, outside his protected class, treated more favorably than he, and therefore cannot establish his prima facie case. The court grants the defendant's motion for summary judgment on the plaintiff's claim of discrimination under Title VII based on being forced to compete.

### b. The Plaintiff Failed to Establish a Prima Facie Case of Age Discrimination Under the ADEA

██ As the court explained, to establish a prima facie case of age discrimination under the ADEA, the plaintiff "must demonstrate facts sufficient to create a reasonable inference that age discrimination was a determining factor in the employment decision." *Cuddy*, 694 F.2d at 856–57; *Miller*, 660 F.Supp. at 1377; *see supra* discussion Part III.B.3.b. Specifically, the plaintiff must prove, *inter alia*, that he suffered an adverse employment action despite his qualifications and performance and he was disadvantaged in favor of similarly situated, younger employees. *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097; *Hall*, 175 F.3d at 1077; *Paquin*, 119 F.3d at 26.

The plaintiff cannot demonstrate that he suffered an adverse employment action. The plaintiff argues in his opposition that the Air Force's temporary denial of promotion and the requirement that he compete for advancement to a GS–301–13 position, both constitute adverse employment actions. Pl.'s Opp'n at 12–13. Then, in complete contradiction to this argument, the plaintiff admits in his responses to the defendant's admissions that his placement as Recreation Support Manager, a GS–301–12 level position, upon his return was proper and in accordance with his Return Rights Agreement. Def.'s Statement ¶ 3; Pl.'s Resps. ¶ 3. The plaintiff's admission

undercuts his argument because it shows that his placement in the GS–301–12 position was correct, that he was not entitled to the GS–301–13 position, and therefore was never temporarily denied the promotion. Because the plaintiff admits placement in the GS–301–12 position was proper, the fact that he had to compete for promotion to a position not determined to be clear successor comes as no surprise. Moreover, the plaintiff was competitively selected for promotion to the GS–301–13 position, Def.'s Statement ¶ 8; Def.'s Mot. at 11; Johnson Aff. ¶¶ 13–15; Lewis Aff. ¶ 7; Miles Aff. ¶ 12–13, which if anything constitutes an advantageous employment action.

In addition, the plaintiff does not demonstrate that he was disadvantaged in favor of a similarly situated, younger employee. *McGill v. Munoz*, 203 F.3d 843, 848 (D.C.Cir.2000); *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C.Cir.1995); *see also O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312–13, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (observing that an ADEA plaintiff need not demonstrate that he was disadvantaged in favor of a person outside of the protected class—i.e. younger than 40 years of age—and that he could demonstrate such disadvantage in favor of a "substantially younger" individual); *see generally* Pl.'s Opp'n. As noted above, the only similarly situated employee to the plaintiff was Ms. Lipps; however, the plaintiff does not allege that he was disadvantaged in favor of her with regard to his ADEA claim. Pl.'s Opp'n at 12–14. Rather, he argues that he was disadvantaged in favor of Mr. Teets. *Id.* But again, Mr. Teets was not similarly situated to the plaintiff, *see supra* discussion Part III.B.4.a., and thus the plaintiff's argument holds no water.

The plaintiff falls short of establishing a prima face case of age discrimination by not drawing the necessary "inference that age ... was a determining factor in the [defendant's] employment decision," *Cuddy*, 694 F.2d at 856–57, and fails on his final theory for which he bases his claim of discrimination. Accordingly, the court grants the defendant's motion for summary judgment on the plaintiff's claim of discrimination under the ADEA based on being forced to compete.

## IV. CONCLUSION

For all the foregoing reasons, the court grants the defendant's motion for summary judgment. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 2nd day of August 2004.